Gary **KINSEY**, Plaintiff,

v.

**CITY OF OPP, ALA.,** et al., Defendants.

No. Civ.A. 98–D–589–N.

United States District Court, M.D. Alabama, Northern Division.

May 19, 1999.

J. Rick Hollingsworth, Enterprise, AL, for plaintiff.

C. Winston Sheehan, Jr., Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendants' Motion For Summary Judgment, filed by Defendants City of Opp and Mark Kyser on January 28, 1999 with their Brief In Support Of Their Motion For Summary Judgment ("Defs.' Br."). Plaintiff filed his Response To Defendants' Motion For Summary Judgment and Brief In Opposition To Motion For Summary Judgment ("Pl.'s Resp.") on February 16, 1999. Defendants filed their Reply To Plaintiff's Response To Defendants' Motion For Summary Judgment ("Defs.' Reply") on February 23, 1999. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motion For Summary Judgment is due to be granted with respect to Plaintiff's federal claims, and that Plaintiff's state claims are due to be dismissed without prejudice.

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983. The Parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (de-

tailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## FACTUAL BACKGROUND

On May 25, 1996, a fatal traffic accident occurred in Covington County, Alabama. Plaintiff went to the accident scene and began taking photographs of the wreck for the Opp News.[1] Although not a full-time employee of the Opp News, Plaintiff sometimes donated newsworthy photographs to the Opp News in exchange for byline recognition, which Plaintiff considered to be valuable advertising, as well as for the public relations benefit.

---

1. Although Plaintiff proffers some evidence indicating that he went to take photographs of the accident scene on behalf of the Covington County Sheriff's Department, the court finds this evidence irrelevant to the instant motion

because: (1) it has no impact on the court's analysis; and (2) Plaintiff definitively stated that he went to the accident scene to take photographs "for the newspaper and not for Covington County." (Kinsey Dep. at 151.)

The County Sheriff's office does not "work wrecks," (Pl.'s Resp. at 1) so accident sites must be secured pending arrival of a state trooper. On May 25, 1996, Defendant Kyser, a sergeant with the Opp Police Department, was working at the accident site to secure the site until a state trooper arrived. According to Defendant Kyser, securing the scene entailed making certain that nothing was done, including having pictures taken, prior to the state troopers' arrival.

When Defendant Kyser noticed Plaintiff taking photographs at the accident scene, Defendant Kyser ordered Plaintiff to stop taking pictures. Plaintiff moved approximately 50 to 60 feet away, then began taking photographs again. Upon noticing Plaintiff taking pictures again, Defendant Kyser approached Plaintiff and told him that if he took another photograph, he would be taken to jail. According to Plaintiff, Defendant Kyser "got in [his] face," shouted at Plaintiff, and had his hands balled in fists. (Kinsey Dep. at 172.)

Plaintiff also claims that another person with a camera was present at the accident site. Additionally, there were approximately 30 to 40 other people at the accident site.

Despite Defendant Kyser's actions, Plaintiff took three photographs of the accident scene. One of these photographs appeared in the Opp News.

Plaintiff commenced this action on May 21, 1998 by filing a six-count Complaint against Defendants Kyser and City of Opp containing the following claims: (1) violation of First Amendment rights, brought pursuant to 42 U.S.C. § 1983, against Defendant Kyser (Count I); (2) violation of the due process clause of the Fifth and Fourteenth Amendments, brought pursuant to 42 U.S.C. § 1983, against Defendant Kyser (Count II); (3) assault, against Defendant Kyser (Count III); (4) harassment and denial of life, liberty, and pursuit of happiness, against Defendant Kyser (Count IV); (5) negligent supervision, against Defendant City of Opp (Count V); and (6) negligent retention of employee Mark Kyser, against Defendant City of Opp (Count VI). Defendants move for summary judgment as to all counts.

## DISCUSSION

### I. *42 U.S.C. § 1983 Claims*

#### A. Against Defendant Kyser In His Individual Capacity

Plaintiff claims that Defendant Kyser violated Plaintiff's First Amendment rights by "forc[ing] Plaintiff to cease taking newsworthy photographs of a fatal automobile wreck by threatening violence and arrest." (Compl.¶ 13.) Plaintiff further claims that, "[b]y forcing Plaintiff to leave the area under threat of arrest or violence, Defendant Mark Kyser[ ] deprived Plaintiff of his property interest in additional photographs and his livelihood without due process of law guaranteed under the Fifth and Fourteenth Amendments to the Untied States Constitution...." (*Id.* ¶ 17.) Defendants claim that Defendant Kyser "is entitled to qualified immunity and should not be held liable." (Defs.' Br. at 9.) The court agrees with Defendants.

█ Addressing the doctrine of qualified immunity, the Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Madiwale v. Savaiko,* 117 F.3d 1321, 1324 (11th Cir. 1997). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■ The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity involves a two-step analysis. The first inquiry concerns "whether the defendant government official was performing a discretionary function." *Madiwale,* 117 F.3d at 1324. In the present case, it is undisputed that Defendant Kyser was performing a discretionary function.

■ The second inquiry asks "whether in doing so, the defendant should reasonably have known that the action violated an individual's clearly established federal statutory or constitutional rights." *Id.* For a constitutional law to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "[T]his is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Madiwale,* 117 F.3d at 1324 (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034).

■ Despite Plaintiff's conclusory allegation that, by denying him access to the accident scene for the purpose of taking photographs, Defendant Kyser violated Plaintiff's constitutional rights, the court finds that Defendant Kyser's actions violated no constitutional rights. First, the court notes that Plaintiff fails to cite, and the court has not found, a single case wherein the Supreme Court, any court in the Eleventh Circuit, or any Alabama state court has addressed whether failure to allow access to an accident scene so a newsperson could take photographs, or circumstances closely analogous to same, constitutes a constitutional violation. This evidences a finding that no clearly established constitutional right was violated. *See Dowdell v. Chapman,* 930 F.Supp. 533, 552 (M.D.Ala.1996) (finding that, "[b]ecause neither the Eleventh Circuit, the Supreme Court of the United States, nor the Supreme Court of Alabama has considered facts and circumstances which are *closely* analogous to those in the case at bar, the court finds that it is not clearly established that the law enforcement officials' actions constituted a Fourth Amendment violation") (emphasis in original).

Further, the Supreme Court specifically has held that "[n]ewsmen have no constitutional right of access to the scenes of crime or disaster when the general public is excluded...." *Branzburg v. Hayes,* 408 U.S. 665, 685, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). The court finds that Plaintiff fails to demonstrate that he was excluded from the accident scene while the general public was not.

According to Defendant Kyser, securing an accident scene entails preventing photographs from being taken prior to the arrival of the State Troopers. Plaintiff presents no evidence to the contrary. In fact, Plaintiff's own witness, Mark Anderson, testified that he would act as Defendant Kyser did under similar circumstances:

Q. Do you have any information with respect to Mark Kiser [sic] about anything he may or may not have done that was improper that evening or that day at Horn Hill?

A. You're more or less asking me to judge what Mark did out there that day and I wasn't there. You know, I can't say what he did was right or wrong, because I don't know the circumstances. Granted, you know, I went to—I had a wreck one day where a guy was impaled on the steering wheel and was hung half out of the car with his head cut off. I mean, you know, if somebody would have come up with a camera

that day, I would have taken it away from them. If I had to take it, I would have took it, you know. You know, whether or not that would have been right, I don't know, you know. I just—that's a call that you leave up to your officer, really, I mean.

(Anderson Dep. at 43–44.)

Plaintiff attempts to demonstrate that Defendant Kyser did not contain the general public at the accident scene as he did Plaintiff because Defendant Kyser failed to "use available law enforcement help to keep civilians out of the area...." (Pl.'s Br. at 3.) The court finds, however, that Plaintiff presents no evidence that Defendant Kyser saw any of the other persons in the area doing anything that should not have been done until the trooper's arrival, whereas Defendant Kyser observed Plaintiff taking photographs. Additionally, Plaintiff contends that another person at the accident site had a camera and that she was not approached by the police, but Plaintiff presents no evidence that Defendant Kyser was aware that this other person had a camera.

Plaintiff also claims that Defendant Kyser's actions toward Plaintiff were not done with the purpose of containing the scene "since he did not erect a barrier[ ][or] cordon off the area...." (Pl.'s Br. at 3.) Plaintiff presents no evidence, however, that containing an area necessarily entails erecting a barrier or cordoning off the area.

Plaintiff further argues that Defendant Kyser admitted to violating Plaintiff's First Amendment right of freedom of the press, as demonstrated by the following portion of Defendant Kyser's deposition:

A. And I went back, they were still checking the victim or whatever. When I went back to the truck and looked around, Gary had his camera up taking pictures behind me then of what appeared to be pictures of the victim. And I walked back up to him, and I told him if he took one ·more picture, I was fixing to put him in the County Jail.

(Kyser Dep. at 17.) The court fails to see how this excerpt constitutes an admission of a constitutional violation. Rather, this passage seems to accord with Defendant Kyser's account of his containment of the accident scene pending arrival of state troopers.

Thus, the court finds that Plaintiff had no right of access to the accident scene and, therefore, Defendant Kyser did not violate any clearly established constitutional right of Plaintiff. Accordingly, the court finds that Defendant Kyser is entitled to qualified immunity, and summary judgment is due to be granted on Plaintiff's § 1983 claims against Defendant Kyser for violation of Plaintiff's First, Fifth or Fourteenth Amendment rights (Counts I and II).

### B. Against Defendants City Of Opp and Kyser in His Official Capacity

In Counts V and VI, Plaintiff brings claims of negligent supervision and negligent retention of employee, respectively, against Defendants City of Opp and Mark Kyser in his official capacity. Plaintiff does not state whether these are federal claims brought pursuant to 42 U.S.C. § 1983 or state claims. To the extent that they are federal claims, the court finds that they are due to be dismissed, as discussed below. To the extent that they are state claims, the court finds that they are due to be dismissed without prejudice, as discussed in § II.

■ As a threshold matter, the court notes that Plaintiff's claims in Counts V and VI against both the City of Opp and Defendant Kyser in his official capacity are redundant. When an officer is sued

under § 1983 in his official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991). Thus, the court finds that Counts V and VI against Defendant Kyser in his official capacity are due to be dismissed, as Plaintiffs have also brought these claims against the City of Opp. *See Id.* at 776 (affirming district court's dismissal of the Plaintiff's claims against the Defendants in their official capacity because to keep both the City and the officers would have been redundant and possibly confusing to the jury).

█ The court also finds that Counts V and VI are due to be dismissed as to Defendant City of Opp. While Defendant City of Opp cannot be held liable for alleged constitutional violations committed by Defendant Kyser against Plaintiff through the doctrine of respondeat superior, a municipality can be held liable for constitutional violations pursuant to § 1983 if the city official responsible for said violations is executing a government policy or custom. *See Monell v. Department of Soc. Serv. of City of N.Y.,* 436 U.S. 658, 661–662, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

> Local governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover ... local governments ... may be sued for constitutional deprivations visited pursu-

ant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Id.* Thus, for a local governing body to be liable, (1) there must have been a constitutional violation, and (2) the violation must have been committed pursuant to a policy or custom.

As detailed above in § I.A., the court found that no constitutional violation occurred. Thus, the first prong of the *Monell* analysis is not satisfied, and Defendant City of Opp cannot be liable. Therefore, the court finds that, to the extent Counts V (negligent supervision) and VI (negligent retention of employee) are brought as federal claims pursuant to § 1983, summary judgment is due to be granted and these claims are due to be dismissed.

## II. *State Law Claims*

█ In Counts III and IV of the Complaint, Plaintiff claims that Defendant Kyser committed state law torts of assault and harassment,[2] respectively. Further, Counts V and VI also contain state claims of negligent supervision and negligent retention of employee, respectively. Because the court has dismissed Plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over Plaintiff's state-law assault and harassment claims. *See* 28 U.S.C. § 1367. Accordingly, these claims will be dismissed without prejudice. Pursuant to 28 U.S.C. § 1367(d), Plaintiff may refile the state law claims in state court within thirty days of this Order or within the remaining period of the appropriate state statute of limitations, whichever is longer.

### *ORDER*

Based on the foregoing, it is CONSIDERED and ORDERED that Defendant's

---

**2.** Count IV of the Complaint states that "the acts of Mark Kyser constitute harassment and denial of life, liberty and pursuit of happiness." (Compl.¶ 25.) The court construes this count as a state-law claim of harassment as Plaintiff already has a federal-law due process claim against Defendant Kyser contained in Count II of the Complaint.

Motion For Summary Judgment be and the same is hereby GRANTED as to Plaintiff's federal claims. It is further CONSIDERED and ORDERED that Counts I and II be and the same are hereby DISMISSED WITH PREJUDICE. It is further CONSIDERED and ORDERED that Counts V and VI, to the extent that they are brought as federal claims pursuant to 42 U.S.C. § 1983, be and the same are hereby DISMISSED WITH PREJUDICE.

It is further CONSIDERED and ORDERED that Plaintiff's state law claims of assault (Count III), harassment (Count IV), negligent supervision (Count V), and negligent retention of employee (Count VI) be and the same are hereby DISMISSED WITHOUT PREJUDICE.

Finally, it is CONSIDERED and ORDERED that, there being no issues remaining for the court's resolution, the above-styled action be and the same is hereby DISMISSED.